**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────

**WILLIAM SMITH,**

                    **Plaintiff,**

          **-v-**                                    **08-CV-0485Sr**

**MICHAEL BENSON, Superintendent, et al.,**

                    **Defendants.**

─────────────────────────────────

<u>**DECISION AND ORDER**</u>

This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #111.


Plaintiff commenced this action pursuant to 42 U.S.C. § 1983; the

Americans with Disabilities Act; and the Rehabilitation Act, alleging that during his

pretrial detention at the Erie County Holding Center ("ECHC"), and Erie County

Correctional Facility ("ECCF"), beginning in 2006 and continuing through February of

2008, he was denied appropriate medical care for his chronic mastoiditis; denied

reasonable accommodations for his severe hearing loss; and disciplined for failing to

obey an order he could not hear.  Dkt. #7.


By Order entered May 31, 2011, the Court granted plaintiff's motion to

appoint counsel.  Dkt. #87.

Currently before this Court is plaintiff's motion to compel discovery.  Dkt. #132.

## Documents

Document Request #3 (property logs)

Document request #3 seeks copies of any and all property receipts, property logs, or any such similar document in the custody of the ECHC/ECCF concerning plaintiff for the period February 2006 through February 2008.  Dkt. #132-7, ¶ 3.

Defendants respond that the requested items do not exist.  Dkt. #132-8, ¶ 3.

Plaintiff argues that defendants' response is incomplete because it fails to indicate whether the information requested "never existed, once existed and was destroyed, exists by a different name, or whether no such records are kept."  Dkt. #132, ¶ 58.

Defendants generally respond that it is improper for plaintiff to request a narrative response to a document demand and that plaintiff has requested documents that "are not in existence or maintained in a manner as requested."  Dkt. #137, ¶¶ 6 & 8.

Defendants shall supplement their response to clarify whether the documents requested ever existed, and if so, attest to their efforts to locate the documents or explain what happened to them.

Document Request #5 (housing logs)

Document request #5 seeks copies of all housing unit log books where plaintiff was housed at the ECHC and ECCF for the period February 2006 through February 2008.  Dkt. #132-7, ¶ 5.

Defendants respond that the requested items do not exist.  Dkt. #132-8, ¶ 5.

Plaintiff argues that defendants' response is incomplete because it fails to indicate whether the information requested "never existed, once existed and was destroyed, exists by a different name, or whether no such records are kept."  Dkt. #132, ¶ 58.

Defendants generally respond that it is improper for plaintiff to request a narrative response to a document demand and that plaintiff has requested documents that "are not in existence or maintained in a manner as requested."  Dkt. #137, ¶¶ 6 & 8.

Defendants shall supplement their response to clarify whether the documents requested ever existed, and if so, attest to their efforts to locate the documents or explain what happened to them.

Document Request #7 (destination sheets)

Document request #7 seeks copies of all Housing Area and Destination Sheets concerning plaintiff at the ECHC and ECCF for the period February 2006 through February 2008.  Dkt. #132-7, ¶ 7.

Defendants produced housing area sheets but respond that the destination sheets do not exist.  Dkt. #132-8, ¶ 7.

Plaintiff argues that defendants' response is incomplete because it fails to indicate whether the information requested "never existed, once existed and was destroyed, exists by a different name, or whether no such records are kept."  Dkt. #132, ¶ 58.  Plaintiff also argues that the records produced for this request fail to indicate where plaintiff was housed within each facility and whether deaf or otherwise disabled inmates were housed in a designated area of either facility.  Dkt. #132, ¶ 58.

Defendants generally respond that it is improper for plaintiff to request a narrative response to a document demand and that plaintiff has requested documents that "are not in existence or maintained in a manner as requested."  Dkt. #137, ¶¶ 6 & 8.

Defendants shall supplement their response to clarify whether the destination sheets ever existed, and if so, attest to their efforts to locate them or explain what happened to them.  Defendants shall also produce any documents which indicate plaintiff's housing location during this time frame or state that no such documents ever existed, or if they did exist, but can no longer be produced, attest to their efforts to locate the documents or explain what happened to them.  Although more properly requested as an interrogatory, defendants shall inform plaintiff whether deaf inmates were housed in a designated area of ECHC and ECCF.

Document Request #10 (observation logs)

Document request #10 seeks copies of all observation logs in the custody of the ECHC and ECCF regarding plaintiff for the period February 2006 through February 2008.  Dkt. #132-7, ¶ 10.

Defendants respond that the requested items do not exist.  Dkt. #132-8, ¶ 10.

Plaintiff argues that defendants' response is incomplete because it fails to indicate whether the information requested "never existed, once existed and was destroyed, exists by a different name, or whether no such records are kept."  Dkt. #132, ¶ 58.

Defendants generally respond that it is improper for plaintiff to request a narrative response to a document demand and that plaintiff has requested documents that "are not in existence or maintained in a manner as requested."  Dkt. #137, ¶¶ 6 & 8.

Defendants shall supplement their response to clarify whether the documents requested ever existed, and if so, attest to their efforts to locate the documents or explain what happened to them.

Document Request #11 (phone logs)

Document request #11 seeks copies of all phone logs in the custody of ECHC and ACCF regarding plaintiff for the period February 2006 through February 2008.  Dkt. #132-7, ¶ 11.

Defendants respond that the requested items do not exist.  Dkt. #132-8, ¶ 11.

Plaintiff argues that a document entitled "Policy and Procedure," disclosed by defendants in this litigation, indicates that when a hearing impaired inmate uses the Telecommunication Devise for the Deaf ("TDD"), in the Echo Long Conference Room, the name of the inmate and the beginning and ending times of telephone usage will be logged in the Echo Long logbook. Dkt. #132, ¶ 54; Dkt. #133-14, p.2 & Dkt. #139, ¶ 5. Plaintiff questions whether the defendants violated their policy by not keeping a phone

log for plaintiff or are violating their obligations to provide plaintiff with relevant discovery.  Dkt. #132, ¶ 55.

Defendants generally respond that it is improper for plaintiff to request a narrative response to a document demand and that plaintiff has requested documents that "are not in existence or maintained in a manner as requested."  Dkt. #137, ¶¶ 6 & 8.

Defendants shall supplement their response to clarify whether the documents requested ever existed, and if so, attest to their efforts to locate the documents or explain what happened to them.

Document Request #12 (incident reports)

Document request #12 seeks copies of all incident reports in the custody of ECHC and ECCF concerning plaintiff together with corresponding narrative.  Dkt. #132-7, ¶ 12.

Defendants respond that the requested items do not exist.  Dkt. #132-8, ¶ 12.

Plaintiff argues that defendants' response is incomplete because it fails to indicate whether the information requested "never existed, once existed and was destroyed, exists by a different name, or whether no such records are kept."  Dkt. #132, ¶ 58.

Defendants generally respond that it is improper for plaintiff to request a narrative response to a document demand and that plaintiff has requested documents that "are not in existence or maintained in a manner as requested."  Dkt. #137, ¶¶ 6 & 8.

Defendants shall supplement their response to clarify whether the documents requested ever existed, and if so, attest to their efforts to locate the documents or explain what happened to them.

### Document Request #16 (communications with USDOJ)

Document request #16 seeks copies of any correspondence, records of phone calls or other documents demonstrating communication between ECHC or ECCF staff and the United States Department of Justice between February 2006 and February 2008 regarding medical treatment provided to inmates in compliance with the ADA or Rehabilitation Act.  Dkt. #132-7, ¶ 16.

Defendants object that the request was over broad, vague and unduly burdensome, but respond that the documents requested are not retained in the manner requested and could contain records protected by medical privacy laws.  Dkt. #132-8, ¶ 16.

Plaintiff argues that defendants' objections are improper given that it has not requested that communications between ECCF and the USDOJ be produced in any particular manner and that the possibility that such communications could contain

protected medical information does not warrant non-disclosure of responsive documents. Dkt. #132, ¶ 42.   Plaintiff suggests that any such information could be disclosed pursuant to a protective order or redaction of identifying information.  Dkt. #132, ¶ 42.

Defendants generally respond that it is improper for plaintiff to request a narrative response to a document demand and that plaintiff has requested documents that "are not in existence or maintained in a manner as requested."  Dkt. #137, ¶¶ 6 & 8.

Defendants shall disclose any correspondence, records of phone calls or other documents demonstrating communication between ECHC or ECCF staff and the United States Department of Justice between February 2006 and February 2008 regarding medical treatment provided to inmates in compliance with the ADA or Rehabilitation Act.  To the extent that these communications contain protected health information of individuals other than plaintiff, the documents may be altered to redact individual identifiers and replace them with initials or assigned numbers.

<u>Document Request #21 (medical department employees)</u>

Document request #21 seeks the names of all persons employed in the medical department at ECHC and ECCF in 2006, 2007 and 2008.  Dkt. #132-7, ¶ 21.

Defendants objected that the request did not seek documents, was over broad, unduly burdensome and could contain records protected by medical privacy laws.  Dkt. #132-8, ¶ 21 & 137, ¶ 9.  Notwithstanding this objection, defendants agreed to provide the name of the medical personnel.  Dkt. #137, ¶ 9.

Although defendant provided a list of employees, plaintiff seeks additional information such as job title, facility, *etc*.  Dkt. #132-7, p.6 & Dkt. #139, ¶ 7.

Although more appropriately requested as an interrogatory and not specifically requested in the initial document request, defendants shall delineate the job title of each individual identified and the facility to which each individual was assigned.

Document Request #22 (medical director)

Document request #22 seeks the name of the medical director(s) at the ECHC and ECCF in 2006, 2007 and 2008.  Dkt. #132-7, ¶ 22.

Defendants objected that the request did not seek specifically identifiable documents.  Dkt. #132-8, ¶ 22.  Notwithstanding this objection, defendants agreed to provide the name of the medical director.  Dkt. #137, ¶ 9.

Plaintiff replies that this information has not been provided. Dkt. #139, ¶ 8.

Although more appropriately requested as an interrogatory, to the extent that defendants have not already done so, they shall identify by name any individual holding the position of medical director at ECHC during 2006, 2007 and 2008 and any individual holding the position of medical director at ECCF in 2006, 2007 and 2008.

<u>Document Request #26 (medical records)</u>

Document request #26 seeks copies of any medical records of plaintiff obtained by the defendants pursuant to authorizations signed by plaintiff.  Dkt. #132-7, ¶ 26.

Defendants responded that documents obtained by NYSDOCCS with the plaintiff's authorization were provided to plaintiff. Dkt. #132-8, ¶ 26.

Plaintiff replies that defendants have failed to provide copies of medical records obtained by defendants through use of the authorization provided by plaintiff. Dkt. #139, ¶ 9.

Defendants shall certify to the Court that it has provided plaintiff with copies of any medical records obtained from third-parties through use of the authorization provided by plaintiff.

<u>Document Request #27 (prior lawsuits)</u>

Document request #27 seeks copies of any prior lawsuits filed by or on behalf of inmates at ECHC and ECCF asserting lack of or inappropriate medical treatment or ADA violations for the last five years.  Dkt. #132-7, ¶ 27.

Defendants objected that the request was over broad, vague and unduly burdensome and responded that the documents requested are not maintained by the defendants in the manner requested and could contain information protected by medical privacy laws.  Dkt. #132-7, ¶ 27.

Plaintiff argues that medical privacy laws do not protect publicly filed legal documents.  Dkt. #132, ¶ 44.

Defendants did not respond to this aspect of plaintiff's motion to compel.

Defendants shall provide copies of any publicly filed lawsuits from 2006 through 2011 by or on behalf of inmates at ECHC and ECCF asserting lack of or inappropriate medical treatment relating to complaints of chronic mastoiditis, ear infections or hearing loss or ADA violations involving inmates with hearing impairments.

<u>Document Request #28 (quality assurance committee)</u>

Document request #28 seeks all records of the quality assurance committee, including a list of members between 2006 and 2008.  Dkt. #132-7, ¶ 28.

Defendants responded that they were investigating whether any such records existed and expressed concern that any such records might infringe upon the privacy rights of other inmates and/or contain information protected by medical privacy laws.  Dkt. #132-8, ¶ 28.

Plaintiff argues that a Quality Assurance Committee was created by the ECHC Medical Department as early as 1997 and was supposed to meet at least biannually to discuss the quality of medical and mental health treatment provided within the ECHC.  Dkt. #132, ¶ 45.

Defendants argue that the quality assurance committee requires confidentiality in order to meet its goals and functions and that the documents requested would have been created and maintained as part of the quality assurance program, which assists in establishing procedures and policies specific to prison health, including development and implementation of quality assurance measures, consistent with applicable regulations and guidelines such as those established by the New York State Department of Health and the New York State Department of Corrections.  Dkt. #137, ¶ 10.

Plaintiff notes that the New York State Commission on Corrections wrote Sheriff Howard a letter indicating that it was awaiting a response to its inquiry about plaintiff and had been informed that the matter had been referred to the Quality Assurance Committee.  Dkt. #139, ¶ 13.

The Court interprets this document demand to seek policies and

procedures regarding the administration of the quality assurance committee.

Defendants are directed to produce any such documents in existence for the time

period of 2006 through 2008.  If there is no document listing the members of the quality

assurance committee during this time frame, defendants shall respond to this request

as though it was an interrogatory.


### Document Request #29 (quality assurance committee)

Document request #29 seeks copies of all records, notes, memoranda,

correspondence, e-mails or other documents of the quality assurance committee for

2006 through 2008 related to plaintiff or any other inmate with a sensorial disability,

including records regarding compliance with the ADA or Rehabilitation Act and protocol

for handling inmates with sensorial disabilities.  Dkt. #132-7, ¶ 29.


Defendants objected that the request infringes on the medical privacy of

other inmates, but responded that they continue to investigate whether any such

records exist.  Dkt. #132-8, ¶ 29.


Defendants argue that the quality assurance committee requires

confidentiality in order to meet its goals and functions and that the documents

requested would have been created and maintained as part of the quality assurance

program, which assists in establishing procedures and policies specific to prison health,

including development and implementation of quality assurance measures, consistent

with applicable regulations and guidelines such as those established by the New York

State Department of Health and the New York State Department of Corrections.  Dkt. #137, ¶ 10.

Plaintiff notes that the New York State Commission on Corrections wrote Sheriff Howard a letter (Dkt. #133-13), indicating that it was awaiting a response to its inquiry about plaintiff and had been informed that the matter had been referred to the Quality Assurance Committee.  Dkt. #139, ¶ 13.

Defendants have not demonstrated that the documents requested are privileged.  *See, e.g., Zikianda v. County of Albany*, No. 12-CV-1194, 2013 WL 936446, at *2-4  (N.D.N.Y. Mar. 8, 2013) (declining to recognize self-critical analysis privilege and medical peer review privilege in the Second Circuit); *Johnson v. Nyack Hosp*., 169 F.R.D. 550, 557-560 (S.D.N.Y. 1996) (declining to recognize federal privilege protecting confidentiality of medical peer review materials).  To the extent that these communications contain protected health information of individuals other than plaintiff, the documents may be altered to redact individual identifiers and replace them with initials or assigned numbers.

### Document Request #34 (hearing loss policies)

Document request #34 seeks copies of all written policies, procedures, manuals, or other directives regarding the treatment/handling of inmates with hearing loss, including documents regarding accommodations or special services provided for hearing impaired inmates.  Dkt. #132-7, ¶ 34.

Defendants' response to this document demand indicates that it produced items responsive to this request.  Dkt. #132-8, ¶ 34.

Plaintiff states that defendants have not responded.  Dkt. #139, ¶ 14.

Defendants shall certify to the Court that it has provided plaintiff with copies of all written policies, procedures, manuals or other directives regarding the treatment/handling of inmates with hearing loss, including documents regarding accommodations or special services provided for hearing impaired inmates.

Document Request #36 (number of hearing impaired inmates)

Document request #36 seeks records of the number of hearing impaired inmates held in custody at ECHC and ECCF from 2003 through 2008, including dates of incarceration.  Dkt. #132-7, ¶ 36.

Defendants objected that the documents requested contained information protected by medical privacy laws.  Dkt. #132-8, ¶ 36.

In response to the motion to compel, defendants argue that they do not maintain a document setting forth the names of hearing impaired inmates in custody. Dkt. #137, ¶ 11.

Plaintiff notes that it is not requesting any identifying information and seeks clarification as to the basis for defendants' objection.  Dkt. #139, ¶ 15.

Accepting defendants' statement that it does not maintain a document specifying the identities of hearing impaired inmates, defendants are directed to respond to this demand as if it were requested by interrogatory.  However, the demand will be limited to the time frame of 2006, 2007 and 2008.  Accordingly, defendants shall provide plaintiff with the number of hearing impaired inmates held in custody at ECHC and ECCF from 2006 through 2008, including dates of incarceration or certify to the Court that such information is unavailable, in which case it shall document its efforts to obtain such information.

<u>Document Request #37 (hearing aid protocol)</u>

Document request #37 seeks copies of any policies, protocols or procedures for obtaining hearing aids for inmates, including any records indicated that ECHC and/or ECCF ever purchased hearing assistive equipment/devices for inmates, including the provider of such equipment; where backup batteries are maintained at the ECHC and ECCF; and receipts for repairs to such equipment.  Dkt. #132-7, ¶ 37.

Defendants responded that the request improperly requested factual information rather than documents and that it was over broad, unduly burdensome, and sought information protected by medical privacy laws.  Dkt. #132-8, ¶ 37.

In response to the motion to compel, defendants argue that whether an inmate received a hearing aid is protected health information pursuant to medical privacy laws.  Dkt. #137, ¶ 12.

To the extent that the responsive documents contain protected health information of individuals other than plaintiff, the documents may be altered to redact individual identifiers and replace them with initials or assigned numbers.  To the extent that there are no responsive documents, defendants shall certify to the Court whether the documents requested ever existed, and if so, attest to their efforts to locate the documents or explain what happened to them.

Document Request #38 (medical policies)

Document Request #38 seeks copies of any and all written policies, procedure manuals, or other directives for treating inmates with chronic medical conditions at the ECHC and ECCF in effect from February 2006 through February 2008. Dkt. #132-7, ¶ 38.

Defendants objected to the extent that this demand sought information regarding inmates who were not hearing-impaired as over broad.  Notwithstanding this objection, defendants referred plaintiff to its response to request #34.  Dkt. #132-8, ¶ 38.

Although defendants provided a manual entitled "Policy and Procedure – Subject: Americans with Disabilities (ADA) Policy," plaintiff has learned from another attorney involved in similar litigation that there is a separate manual entitled "Policy and Procedures Manual – Erie County Sheriff's Office Holding Center Division Medical Department (Medical Manual)."  Dkt. #132, ¶ 53.  Plaintiff argues that such a manual

would be responsive to its document request and should have been disclosed by defendants.  Dkt. #132, ¶ 53.

Defendants shall produce the manual entitled "Policy and Procedures Manual – Erie County Sheriff's Office Holding Center Division Medical Department (Medical Manual)," or certify to the Court that this document is unavailable, in which case it shall document its efforts to obtain such information.

**Interrogatories**

John/Jane Doe Medical Director

Plaintiff served interrogatories upon unidentified Medical Department Staff.  Dkt. #132-9, p.2.

Upon identification of the Medical Department Staff as directed in Document Demand #22 above, plaintiff may amend his complaint to name the appropriate defendant(s), at which time plaintiff may serve interrogatories upon such defendant(s).

County of Erie

Plaintiff served a second set of interrogatories upon defendant Erie County following appointment of counsel.  Dkt. #133-1, p.51.  Although Erie County responded to plaintiff's initial interrogatories, which were served by plaintiff *pro se*, plaintiff seeks leave to serve interrogatories prepared by counsel.  Dkt. #132, ¶ 62.

Plaintiff notes that the Assistant County Attorney representing defendants at the time agreed to respond to the second set of interrogatories on behalf of the original defendants, but a newly assigned Assistant County Attorney objected.  Dkt. #132, ¶¶ 63 & 64.

Counsel objected to the second set of interrogatories in light of their response to plaintiff's *pro se* interrogatories and suggests that plaintiff's counsel be directed to pose her questions to defendants during the course of depositions.  Dkt. #137, ¶ 13.

The County of Erie shall respond to plaintiff's second set of interrogatories. *See* Dkt. #133-1. However, the time period set forth in the interrogatory requests shall be limited to 2006, 2007 and 2008.  Moreover, to the extent that these interrogatories require disclosure of protected health information of individuals other than plaintiff, the responses may identify inmates by initials or assigned numbers.

**Inspection**

Plaintiff seeks to observe and photograph all facilities available for deaf inmates, including hearing assisted telephone devices, closed captioned televisions, *etc.*  Plaintiff's counsel also seeks to observe where plaintiff was housed within the ECHC, the medical facility, and the location of any flashing lights used in place of alarm bells to notify deaf inmates of movement, meals or other programming.  Dkt. #132, ¶ 30.

Defendants object that an inspection of the ECHC "will cause disruption and potentially compromise security at the facility,"  but offered to "find an appropriate alternative to the inspection, such as production of photographs."  Dkt. #137, ¶ 14.

The Court directs defendants to permit inspection and photographs of the ECHC as requested by plaintiff, to the extent that such inspection can be accomplished without compromising the security of the facility.  To the extent that legitimate security concerns preclude such inspection, defendants shall provide plaintiff with video as well as photographs of the locations and devices sought to be inspected.

**Stephen Swain**

Plaintiff seeks an order directing disclosure of all agreements or documents pertaining to Mr. Swain's employment status while he worked at the ECHC, as well as an order directing the County Attorney to accept service of the summons and complaint and defend and indemnify Mr. Swain.  Dkt. #132, ¶ 82.

As Mr. Swain has filed an Answer to this action (Dkt. #140), this aspect of plaintiff's motion to compel is moot.  However, to the extent it has not done so already, defendants shall produce any and all agreements or documents relating to Erie County's employment relationship with Mr. Swain and/or contractual relationship with Physician's Assistants of Western New York from 2006 through the present.

**Sanctions**

Plaintiff argues that "the Erie County Attorney's Office, by not being forthcoming in its response to Plaintiff's request for production of documents or interrogatories, by objecting where such objections are not grounded in the rules of civil procedure or in case law, and by not raising the Stephen Swain employment issue in its response to Plaintiff's motion to file and serve a second amended complaint . . . has caused unnecessary delay and needlessly increased the cost of litigation." Dkt. #132, ¶ 84. As a result, plaintiff seeks sanctions in accordance with Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure to compensate for the "inordinate amount of time in obtaining discovery from the County." Dkt. #132, ¶ 85. Plaintiff's counsel declares that she has expended in excess of 20 hours on this motion and co-counsel has expended at least 15 hours on this motion. Dkt. #132, ¶ 86.

Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> If the motion [to compel disclosure or discovery] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both of them to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But, the court must not order this payment if:
>
> (I)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii)    other circumstances make an award of
expenses unjust.

Having found that several of defendants' objections to discovery demands

were unjustifiable, and wishing to discourage technical objections in favor of

cooperative discovery of relevant information, particularly in cases such as this where

counsel has been appointed to represent a plaintiff *pro bono*, the Court agrees that an

award of attorney's fees is appropriate.  Balancing counsel's representation as to the

amount of time expended on this discovery motion with the recognition that some of the

defendant's objections raised legitimate issues for resolution by the Court, the County

of Erie is directed to compensate plaintiff's counsel for 50% of the hours expended on

this motion.  If the parties cannot agree on the reasonableness of counsel's hourly rate,

plaintiff's attorney shall submit an affidavit in support of her award of attorney's fees no

later than **April 29, 2016**.


**SO ORDERED.**


**DATED:**     **Buffalo, New York**
**March 21, 2016**


  **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**